UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHARAZAN ZAYAS o/b/o J.X.A.,

    Plaintiff,

v.                                                      CASE NO. 8:18-CV-2918-T-MAP

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

## **ORDER**

Pursuant to 42 U.S.C. § 1383(c)(3), Plaintiff, on behalf of J.X.A., her minor son, seeks judicial review of the Commissioner's decision denying her claim for Childhood Supplemental Security Income benefits.[1] She argues the Administrative Law Judge ("ALJ") erred by failing to properly consider opinion evidence; and in evaluating her son's limitations in the functional equivalence domains of "acquiring and using information" and "attending and completing tasks." She also challenges the constitutional validity of the ALJ's appointment. Having considered the record and Plaintiff's arguments, I find that remand is needed.

    *A. Background*

Unfortunately, this case has a complex history. Plaintiff, who alleges her son (J.X.A.) is disabled due to attention deficit hyperactivity disorder (ADHD), hyperactivity, speech delay, biting, and hitting, first filed an application for supplemental security income benefits on his behalf

---

[1] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge, pursuant to 28 U.S.C. § 636 (c). *See* doc. 12.

on January 23, 2013. While Plaintiff alleges her son's disability began on June 1, 2010, the protective filing date of Plaintiff's application, January 25, 2013, is the relevant date for this disability determination (R. 669). Born on May 14, 2006, J.X.A. was ten years old at the time of the most recent administrative hearing, held on May 3, 2017 (R. 730).

Initially, Plaintiff's claim was denied at the administration level and by the ALJ in a decision dated August 5, 2014 (R. 26-40). Thereafter, the Appeals Council denied review, and Plaintiff filed a civil action in the United States District Court for the District of Massachusetts. After the Commissioner filed an unopposed motion to remand, the district court remanded the case for further administrative proceedings, specifically directing the ALJ to re-evaluate the level of limitations in the functional equivalence domain "caring for yourself" and otherwise complete the three-step child disability process (R. 694). As a result, the Appeals Council remanded the matter to the SSA with instructions to reconsider "how well the claimant maintains a healthy emotional and physical state" (R. 691-92). The same ALJ held another hearing, and issued another decision denying benefits on June 21, 2017 (R. 668-683). In her decision, the ALJ noted Plaintiff had filed a subsequent "duplicative" claim on behalf of her minor son, "associate[d] the claim files," and issued her decision on the associated claims (R. 668). The ALJ found that J.X.A. has the following severe impairments: ADHD; speech and language delays; and asthma (R. 672). However, she found J.X.A's asthma controlled with medication on an as-needed basis and non-severe (R. 672).

The ALJ concluded that J.X.A. "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1" (R. 672). And, finally, the ALJ found that J.X.A. does not have an impairment or combination of impairments that functionally equals the severity of the listings

2

(R.672). Specifically, she found that J.X.A. had less than marked limitations in acquiring and using information (R. 677); attending and completing tasks (R. 679); interacting and relating with others (R. 680); and caring for yourself (R. 682). She found no limitations in the domains moving about and manipulating objects (R. 681) and health and physical well-being (R. 682). In light of these findings, the ALJ denied Plaintiff's claim for disability (R. 683).

Plaintiff sought Appeals Council review, asserting the ALJ failed to properly evaluate three of the functional equivalence domains: attending the completing tasks; interacting and relating with others; and caring for yourself (R. 658). The Appeals Council considered Plaintiff's exceptions and found no reason under its rules to assume jurisdiction (R. 658-59). Thus, the ALJ's decision is the final agency decision. Plaintiff has timely pursued and exhausted her administrative remedies and the case is now ripe for judicial review.

*B. Standard of Review*

In 1996, the Social Security Act was amended with respect to eligibility for child's disability benefits. As amended, the Act now provides (42 U.S.C. § 1382c(a)(3)(C)(i)):

> An individual under the age of 18 shall be considered disabled ... if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

The Commissioner subsequently issued regulations explaining how this provision would be implemented in determining whether a child is disabled. *See* 20 C.F.R. § 416.924.

Similar to the approach taken with adults, the Commissioner assesses child disability claims under a sequential analysis. 20 C.F.R. § 416.924(a). The first step is to determine whether the child is actually working at substantial gainful activity. 20 C.F.R. § 416.924(b). If not, the

3

second step asks whether the child has a severe impairment. 20 C.F.R. § 416.924(c). If he does not, the child is considered not disabled. *Id.* If there is a severe impairment, the third, and final, step in the analysis is to determine whether the child has an impairment that meets, medically equals, or functionally equals, a set of criteria in the Listing of Impairments in Appendix 1. 20 C.F.R. § 416.924(d). For a child's impairment(s) to functionally equal the listings, the child's impairment(s) must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a. A child has a "marked" limitation in a domain when his impairment(s) interferes seriously with his ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2). A "marked" limitation is more than moderate, but less than extreme. *Id.* A child has an "extreme" limitation when the child's impairment interferes very seriously with his ability to initiate, and the limitation is "more than marked." 20 C.F.R. § 416.926a(e)(3). An extreme limitation is assigned only to the worst limitations, but does not necessarily mean a total lack or loss of ability to function. *Id.* If the child functionally equals the listings, then he is deemed disabled. 20 C.F.R. § 416.924(d)(1). If he does not, then he will be found not disabled. 20 C.F.R. § 416.924(d)(2). In assessing functional equivalence, the fact finder considers the child's functioning in terms of six domains: 1) acquiring and using information; 2) attending and completing tasks; 3) interacting and relating with others; 4) moving about and manipulating objects; 5) caring for himself; and 6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

As with claims by adults, a determination by the Commissioner that a child is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

4

*Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (*en banc*), cert. den'd, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971).[2] Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as precedent the decisions the former Fifth Circuit rendered prior to October 1, 1981.

*C. Discussion*

*1. opinion evidence*

*a. state agency consultants' opinions*

Plaintiff asserts the ALJ did not weigh the state agency consultants' opinions that J.X.A. had marked limitations in the domain of acquiring and using information. Per the applicable regulation, the ALJ must consider the state agency medical consultants' findings and opinions as they are "highly qualified and experts in Social Security disability evaluation," but the ALJ is "not required to adopt any prior administrative medical findings." 20 C.F.R. § 404.1513a(b). Without an explanation of the weight accorded to each item of evidence and an explanation of the reason for the ALJ's decision, it is impossible for the Court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence. *Demsey v. Comm'r of Soc. Sec.*, 454 Fed. App'x 729, 732-33 (11th Cir. 2011).

Looking at the decision, the ALJ discussed the SSA's reconsideration disability determination, noting that state agency consultant Perlman (a doctor of education (Ed.D.)) reviewed the record on October 10, 2013, and Lynne Charland (a speech-language pathologist), reviewed the record on September 12, 2013 (R. 676). *See* SSA reconsideration disability determination (R. 90-91).[3] The ALJ stated:

> The claimant was assessed with a severe speech and language impairment, and severe ADHD, and a severe learning disorder. … The domain of Acquiring and Using Information was assessed as "marked." The domain of Attending and Completing Tasks was assessed as "less than marked." The domain of Interacting and Relating with Others was assessed as "less than marked." The domain of Moving About and Manipulation of Objects was assessed with "no limitation." The domain of Caring for

---

[3] The administrative record also contains the SSA's initial disability determination (R. 77-78). While the evaluation section of the initial disability determination includes the name of pediatrician Julie Myers (R. 78), the determination is signed by psychologist Lawrence Langer, Ph.D. The reconsideration disability determination is signed only by Jon Perlman, Ed.D. (R. 94).

Yourself was assessed with "no limitation." The domain of Health and Physical Well-Being was assessed as "less than marked."

(R. 675-76). Then, when she addressed the claimant's limitations in acquiring and using information, the ALJ again cited to the SSA's reconsideration level decision (which she refers to as Exhibit 4A). She explained:

> The claimant's limitations in speech and language are 'less than marked.' The claimant has moderate difficulties in expressive and CORE language with a mild receptive delay. Both receptive and expressive vocabulary were in the average range. Areas of greatest weakness were in the work structure, sentence recall, syntax, morphology and short-term auditory memory. Speech was fully intelligible and there are not issues with pragmatic (social) language (Exhibit 4A). The IEP (January 2013 to January 2014) indicated a mild delay in receptive/ expressive language, and a moderate delay in expressive language skills. The claimant receives speech therapy services, and progress reports indicate the claimant has made gains (Exhibit 4A). As the result of treatment and medication for ADHD, the claimant has made progress improving his CANS scores from 2's to 1's in the domains of family functioning, community, oppositional behaviors, conduct, emotional control, and judgment (Exhibit 17F, p.4).

(R. 677-678).[4] As is clear from these excerpts, the ALJ did not "ignore" the state agency consultants' opinion that J.X.A. is markedly limited in the domain of acquiring and using

---

[4] This is the only domain where the ALJ's opinion differs from conclusion of the state agency at the administrative level. In finding that J.X.A. had "marked" limitations in the domain of Acquiring and Using Information, the initial disability determination provides:

> Speech – Language Pathology: Limitations in Speech and Language are "less than marked." Child presented with moderate difficulties in expressive and CORE language with a mild receptive delay. Both receptive and expressive vocabulary were in the average range. Areas of greatest weakness were in word structure, sentence recall, syntax, morphology and short-term auditory memory. Speech was fully intelligible and he was stimulable for the 2 error sounds cited. No issues with pragmatic (social) language were mentioned."

> Pediatrics: [BLANK]

> Psychology: Although measured intelligence in average academic screening with WRAT indicates borderline to very low scores academically.

7

information. The problem is that it is insufficient to simply summarize the evidence; merely referring to it falls short of the legal standard required. "The Court cannot conduct a meaningful review if the ALJ fails to state what legal standards she applied or what weight she gave to the medical evidence." *Perez-Rosario ex rel. A.G.L. v. Comm'r of Soc. Sec.,* 2008 WL 1776569, *4 (M.D. Fla. 2008) (citing *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985)). While perhaps arguably the ALJ implicitly discredited the state agency's conclusion, failure to explain why renders review impossible. *Id.* (citing *Vuxta v. Comm'r of Soc. Sec.*, 194 Fed. App'x. 874, 876-77 (11th Cir. 2006) (unpublished) (failure to explain weight given to a medical opinion is reversible error)). *See also Farr o/b/o T.F. v. Colvin*, 2017 WL 164355 (M.D. Fla. 2017) (finding reversible error where ALJ disregarded opinions of physician and psychologist state agency consultants concerning minor claimant's marked limitations in domain of acquiring and using information). And, in a case like this one where the medical opinion evidence is slim, the evidence from state agency consultants is even more important, especially given that the regulations with respect to childhood disability require particularly meticulous review of all of the evidence of record and a particularly clear explanation as to the ALJ's reasons for each finding. *Perez-Rosario, supra.*

---

(R. 77).

The reconsideration level disability determination also concludes J.X.A. had "marked" limitations in Acquiring and Using Information. The explanation is identical to the agency's initial determination but adds the following updated information:

> Speech-Language Pathology: Less than marked limitations in receptive/expressive language. Current IEP (1/13-1/14) indicates a mild delay in receptive language skills (SS= 79) and a moderate delay in expressive language skills (SS= 69). Receptive (SS=103) and expressive vocabulary (SS=94) are average. Child receives speech therapy services. Latest progress report (6/13) indicates that "he made some nice gains."

(R. 90).

Accordingly, I find remand appropriate for reconsideration of the state agency consultants' opinions, explain what weight they are being accorded and the reasons therefor. If the ALJ rejects any portion of these opinions, she must explain her reasons for doing so.

*b. Dr. Bujold's opinions*

While the ALJ's failure to weigh the state agency consultants' opinions is a reversible error, her failure to discuss the opinions of Dr. Kenneth Bujold is a harmless one. Dr. Bujold examined J.X.A. only one time, on February 13, 2012 (R. 395-399). My review of Dr. Bujold's treatment note leads me to conclude that Dr. Bujold was a resident physician who worked under attending physician Rochelle Kushner at Baystate Pediatrics. *See* R. 395 (addendum by Dr. Kushner indicates she "reviewed the patient's medical history, findings on examination, diagnosis and treatment plan as documented in the resident/team note. Case and its management discussed with the resident/ team on the day of service"); R. 399 (end of office note states "seen by Bujold DO, Kenneth, Discussed with Dr. Kushner MD, Rochelle"). On April 16, 2013 (more than a year after he saw J.X.A.), Dr Bujold completed a two-page Childhood Disability Evaluation Form. On the form, Dr. Bujold checked boxes indicating that J.X.A. has "less than marked" limitations in the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others; and that he has "no evidence of limitation" in the domains of moving about and manipulating, caring for oneself, and health and physical well-being (R. 400). The form asked the doctor to "Cite the evidence (signs, symptoms, laboratory findings, include test scores, and interpretations, professional observations and lay descriptions of the child's functioning, kinds of effects of treatment, and any other necessary information) that supports your findings. Describe the severity of any functional limitations that result from the impairment(s) and related symptoms; record your evaluation of the evidence, including your evaluation of symptoms and opinion

9

evidence" (R. 401). In response, Dr. Bujold wrote only that "During my one visit with the patient, he was very active with his multiple siblings. At that time mother reports that disciplinary reports are only a couple time a week. Pt doc [sic] had a partial hospitalization in 10/20/12. His ADHD has not been under control despite medications and counseling at 110 Maple St" (R. 401).

Testimony or opinions from a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary. *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 19970. Thus, ordinarily, an ALJ's failure to explain the particular weight given to medical opinions results in reversible error. *Tillman v. Comm'r of Soc. Sec.*, 559 Fed. Appx. 975, 975 (11th Cir. 2014) (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). However, when an ALJ's error does not affect the ALJ's ultimate findings, the error is harmless and the ALJ's decision will stand. *Tillman, supra,* at 975 (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (finding ALJ's failure to assign weight to two doctors who treated plaintiff during his hospitalization harmless error)). *See also Wright v. Barnhart*, 153 Fed. Appx. 678, 684 (11th Cir. 2005) (finding ALJ's failure to explicitly state weight afforded to opinions of several physicians was harmless error because none of the opinions directly contradicted ALJ's findings); *Lopez v. Berryhill*, 2019 WL 2254704 (S.D. Fla. Feb. 26, 2019) (ALJ's failure to explicitly state weight given to five one-time physicians and one physician who had seen claimant twice was harmless error because "even if the ALJ had considered their opinions, they were not entitled to deference because they were only one-time examiners"). I note also that the Eleventh Circuit has found that a doctor who examines a patient on only one occasion is neither considered a "treating physician" nor entitled to great weight. *Crawford v. Comm'r of Soc. Sec.*, 363 F. 3d 1155, 1160 (11th Cir. 2004) (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987)).

In this case, Dr. Bujold's opinions did not directly contradict the ALJ's findings or affect her ultimate decision. In fact, the ALJ's conclusions about J.X.A.'s limitations were the same as Dr. Bujold's with regard to five of the six domains: both concluded J.X.A. has less than marked limitations in the domains of acquiring and using information, attending and completing tasks, and interacting and relating to others; and no limitation in the domains of moving about and manipulating objects, and health and physical well-being (R. 400, 676-681). As to the remaining domain, the ability to care for himself, the ALJ found that J.X.A. had less than marked limitation whereas Dr. Bujold opined that J.X.A. had no evidence of limitation (R. 400, 682). Thus, any error regarding Dr. Bujold's opinions is, at most, harmless.

### 2. *functional equivalence analysis*

Plaintiff maintains the ALJ erred in assessing J.X.A.'s limitations in the domains of acquiring and using information and attending and completing tasks. She asserts J.X.A. has marked or extreme limitations in these domains, and points to specific test scores and information from Individual Educational Plan (IEP) progress reports the ALJ did not discuss. The applicable regulations recognize that no single piece of evidence will be dispositive of whether an individual has a marked or an extreme limitation in a domain, but the regulations also require consideration of all evidence, including information from doctors, psychologists, qualified speech-language pathologists, and nonmedical sources such as parents, teachers and others. In evaluating the effects of functioning, the regulations explain that test scores, school reports that show the results of formal testing or describe any special education instruction or services, any accommodations provided in a regular classroom, extra help including special equipment, devices, supervision, and medications), adaptations that enable the child to function normally or almost normally, structured or supportive settings. *See* 20 C.FR. § 416.924a(a)-(b). When it comes to evidence from

nonmedical sources, like teachers, the ALJ's consideration of such evidence is permissive. As Plaintiff asserts, some of her son's test scores are extremely low. While the ALJ is not required to refer to every piece of evidence in the decision, it seems that the ALJ failed to discuss the bulk of the educational records and reports contained in the administrative record. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). And, while the ALJ properly considered the fact that J.X.A. improved when he took his ADHD medications, she did not discuss the extra help, adaptations, or special education and accommodations the evidence reveals he needed.[5] *See* 20 C.F.R. §§ 416.924a, 416.926a(a)(3).

Of course, this Court's review of the Commissioner's decision is limited to whether substantial evidence supports the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart,* 284 F.3d 1219, 1221 (11th Cir. 2002). This Court may not decide fasts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Dyer, supra*, 395 F.3d at 1210. However, here in addition to finding that the ALJ did not adhere to the regulations concerning weighing state agency opinions, for the reasons set forth, I find that on remand the ALJ should reconsider J.X.A.'s functional limitations in the domains of acquiring and using information and attending and completing tasks.

### 3. Appointments Clause

Finally, as to Plaintiff's assertion that the ALJ was not properly appointed and lacked authority to decide her case, I find no merit. *See generally Lucia v. Securities and Exchange Comm.*, __ U.S. __, 138 S.Ct. 2044 (2018) (holding petitioner raised "timely" challenge to appointment of ALJ who heard his case because he first raised issue during administrative

---

[5] The ALJ's reasoning in deciding J.X.A's limitations in this domain is sparse. She stated only that "claimant has had significant problems with attention and concentration, but there has been considerable improvement with medication, counseling, and a change in schools" (R. 679).

proceedings before SEC); *Sims v. Apfel*, 530 U.S. 103, 108 (2000). Plaintiff, as the Commissioner notes, should have raised this complaint earlier. By failing to do so, Plaintiff waived or forfeited he Appointments Clause challenge. *See* doc. 17, p. 28, citing *Freytag v. Comm'r of Internal Rev.*, 501 U.S. 868, 878 (1991) (finding Appointments Clause challenges "non-jurisdictional" and this subject to waiver or forfeiture if not raised in timely manner); *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952) (holding that parties may not wait until court to raise a statutory "defect in the … appointment" of the official who issued agency's initial decision); *Elgin v. Dep't of Treasury,* 567 U.S. 1, 23 (2012) (plaintiff required to exhaust constitutional claim to administrative agency before seeking review in federal court). The Court rejects Plaintiff's argument that based on *Sims v. Apfel,* U.S. 103 (2000) her Appointments Clause challenge is not untimely. Other courts have rejected this argument already. *See e.g. Shalibi v. Berryhill,* 883 F.3d 1102, 1109 (9th Cir. 2017) (declining to extend *Sims* to issue not raised before ALJ); *Miaolino v. Comm'r of Soc. Sec*, case no. 2:18-cv-494-FtM-UAM, 2019 WL 2724020 (M.D. Fla. July 1, 2019) (explaining that "*Sims* concerned only whether a claimant must present all relevant issues *to the Appeals Council* to preserve them for judicial review; the [Supreme] Court specifically noted that '[w]hether a claimant must exhaust issues before the ALJ is not before us.'"); *Jones v. Berryhill*, 2019 WL 2583157, n.10 (collecting post-*Sims* cases rejecting assertion that claims need not be exhausted in social security administrative proceedings).[6] *See also Cirko on behalf of Cirko v.*

---

[6] As the *Miaolino* court indicated, in *Lucia* the Court did not make a blanket finding that all ALJs are subject to the Appointments Clause, but only that SEC ALJ**s** were so subject. At the time of the Supreme Court's decision, the SEC had only five ALJs. *Lucia*, 138 S.Ct. at 2049. In contrast, there are currently over 1,700 Social Security Administration ALJs. *Miaolino, supra,* at *7 citing ALJ Disposition Data FY 2019, *available at* [https://www.ssa.gov/appeals/DataSets/03_ALJ_Disposition_Data.html]. The SSA conducts hundreds of thousands of hearings and adjudicates hundreds of thousands of disability claims each year. As the Commissioner notes, the Social Security Administration has annually received about 2.6 million initial disability claims; annually completed about 689,500 ALJ hearings; and

*Comm'r of Soc Sec.*, __ F.3d __, 2020 WL 370832 (3rd Cir. Jan. 23, 2020) (holding exhaustion not required for Social Security disability claimants because both characteristics of Social Security Administration review process and rights protected by the Appointments Clause favor resolution of such claims on the merits).

    D.    *Conclusion*

For the reasons stated above, it is ORDERED:

1. The ALJ's decision is REVERSED, and the case is remanded to the Commissioner for further administrative proceedings consistent with this Order; and
2. The Clerk of Court is directed to enter judgment for Plaintiff and close the case.

DONE and ORDERED in Tampa, Florida on January 30, 2020.

_____
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

---

in 2018 took on average 809 days to process a claim from its initial receipt to an ALJ decision and more than 850,000 people were waiting for ALJ hearings. *See* doc. 17, n.10, citing SSA's Annual Performance Report, Fiscal Years 2018-2020, at 4, 42, 46 (2019).